IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-02722-DDD-NRN

CASSANDRA KELLER,

Plaintiff,

v.

JACOB COLEMAN,

Defendants.

---

**ORDER ON DEFENDANT TOWN OF LAKESIDE'S MOTION FOR ATTORNEY FEES
AND COSTS (ECF No. 27)**

---

**N. REID NEUREITER
United States Magistrate Judge**

This matter comes before the Court on Defendant Town of Lakeside's

("Lakeside" or "the Town") Motion for Attorney's Fees and Costs, filed November 13,

2025, ECF No. 27. Plaintiff Cassadra Keller filed a response on December 4, 2025,

ECF No. 31. The Court heard argument on the motion at a hearing on January 22,

2026. (ECF No. 37). The matter was referred for decision to the undersigned by Chief

Judge Daniel D. Domenico on November 13, 2025, ECF No. 28.

## I.    BACKGROUND

This is a civil rights case alleging the unconstitutional use of excessive force

during the arrest of Plaintiff who was suspected of shoplifting from a Walmart store in

the Town of Lakeside, Colorado on October 2, 2022. Plaintiff was allegedly tackled with

force by Defendant Officer Jacob Coleman ("Officer Coleman"), causing the Plaintiff to

lose some teeth from hitting her face on the ground. Also, she was allegedly pregnant at the time and suffered a miscarriage from the incident.

In addition to suing the officer who tackled her, Plaintiff sued the Town of Lakeside, Officer Coleman's employer. *See* ECF No. 1 (original complaint, filed October 1, 2024) and ECF No. 14 (amended complaint filed January 21, 2025). The original complaint brought a single claim under 42 U.S.C. § 1983 for use of excessive force in violation of the Fourth Amendment to the United States Constitution. *See* ECF No. 1. On December 31, 2024, the Town and Defendant Coleman moved to dismiss for failure to state a claim. ECF No. 9.

In its motion to dismiss the original complaint, the Town pointed out the basic principle that a municipality may not be sued under 42 U.S.C. § 1983 on a theory of respondeat superior for the actions of its employees. ECF No. 9 at 3 (citing *Monell v. Dep't of Soc. Servs. of N.Y.*, 436 U.S. 658, 692 (1978)). Instead, local governing bodies can be sued directly only where "the action that is alleged to be unconstitutional implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." *Monell*, 436 U.S. at 609. "[I]t is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* at 694. So, in order to state a claim for municipal liability under § 1983 for the actions of municipal employees, a plaintiff must allege sufficient facts to demonstrate that it is plausible that (1) the municipal employee committed a constitutional violation; and (2) a municipal policy or custom was the moving force behind the constitutional deprivation. *Jiron v. City*

2

*of Lakewood*, 392 F.3d 410, 419 (10th Cir. 2004). A municipal policy or custom can take the form of:

> (1) a formal regulation or policy statement; (2) an informal custom amoun[ting] to a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; (3) the decisions of employees with final policymaking authority; (4) the ratification by such final policymakers of the decisions – and the basis for them – of subordinates to whom authority was delegated subject to these policymakers' review and approval; or (5) the failure to adequately train or supervise employees, so long as that failure results from 'deliberate indifference' to the injuries that may be caused.

*Bryson v. City of Okla. City*, 627 F.3d 784, 788 (10th Cir. 2010) (citations omitted).

In its initial motion to dismiss, the Town pointed out that Plaintiff in her original complaint had made not even a bare attempt to state the basis for the Town's liability under § 1983. ECF No. 9 at 4 (noting that the initial complaint only made two factual references to the Town—that it is a "municipality in the State of Colorado" and that the Plaintiff was "severely injured by officers of the Lakeside Police Department").

In response to the initial motion to dismiss, Plaintiff filed an amended complaint on January 21, 2025. ECF No. 14. The amended complaint fared no better in its allegations that might have established *Monell* liability against the Town. The body of the amended complaint's factual allegations with respect to the Town were (1) that "Lakeside is responsible for investigating, hiring, training, supervising, and disciplining its employees," *Id.* at ¶ 32, and (2) that "Lakeside failed its supervisory duties to adequately investigate, hire, train, supervise, and discipline its employees with respect to their duties under federal and state law regarding excessive force." *Id.* at ¶ 33. These are almost the definition of conclusory assertions without any underlying factual basis.

3

In the "claim" section of the amended complaint directed at the Town, there were additional allegations of a "documented history of mismanagement" by the Town and "disregard for the rule of law." *Id.* at ¶ 51. The supporting allegations with respect to this supposed "documented history of mismanagement" recounted that the Town's former police chief had pled guilty to "embezzlement of public property and first-degree official misconduct" on January 7, 2025. *Id.* at ¶ 52. The guilty plea arose from a scheme where the police chief would sell town vehicles for below fair market price to his daughter, who would then sell the vehicles for personal profit. *Id.* at ¶ 53. What this supposed "disregard of the rule of law" had to do with a subordinate police officer's alleged use of excessive force in tackling a fleeing shoplifter was not clear. As Judge Domenico noted in his September 26, 2025 opinion dismissing the amended complaint, "to state a plausible claim against the Town of Lakeside, Ms. Keller must show that the execution of an illegal policy or custom inflicted her injuries. In doing so, she 'must demonstrate a direct causal link between the policy or custom and the injury alleged'." ECF No. 22 at 8 (quoting *Waller v. City and Cnty. of Denver*, 932 F.3d 1277, 1284 (10th Cir. 2019). Not only was there no alleged causal link between the supposed embezzlement and the excessive use of force, to even try to make such an argument would be an exercise in futility.

Judge Domenico's opinion dismissing without prejudice Plaintiff's claims against the Town was comprehensive in identifying the meagerness of the claim; calling the contentions "legally inadequate," noting that "[m]ost of her allegations are entirely conclusory," and describing the non-conclusory allegations about the supposed "documented history of mismanagement and disregard for the rule of law," as "largely

4

irrelevant." *Id*. As Judge Domenico stated, Plaintiff "provides no explanation, let alone legal precedent, for why or how such financial misconduct can serve as the basis for finding that the Town had a policy, practice, or custom that authorized the use of excessive against accused shoplifters." *Id.* at 9.

In response to Judge Domenico's order, Plaintiff filed a second amended complaint which dropped completely the claims against the Town of Lakeside, focusing only on Officer Coleman as a litigation target. ECF No. 26.

## II.     TOWN OF LAKESIDE'S MOTION FOR ATTORNEY FEES

The Town moves for its attorney fees under the fee-shifting provision of 42 U.S.C. § 1988. Under that provision, "the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs" of defending an action brought under § 1983. 42 U.S.C. § 1988(b). Under the lodestar formula of hours spent, times hourly rate, the Town's total attorney fees in defending the action were $8,884.00 and costs were $225.00. *See* ECF No. 27-1 (Affidavit of L. Kathleen Chaney). Plaintiff does not dispute the reasonableness of the hours spent or the hourly rates of the attorneys who worked on the matter on behalf of the Town.

The Town argues that it should be entitled to its attorney fees because the "claims against Town of Lakeside were frivolous from the outset yet were perpetuated through two complaints over the course of nearly a full year." *Id.*

In response, Plaintiff argues that fees should not be awarded just because Plaintiff was unsuccessful. Citing *Hughes v. Rowe*, 499 U.S. 5, 14–15 (1980), Plaintiff explains that assessing attorney fees "simply because they do not finally prevail" would

5

add substantial risks to most litigation and undercut the efforts of Congress to promote

vigorous enforcement of civil rights laws. ECF No. 31 at 1–2.

### III.    ANALYSIS

"[T]he decision to award or deny attorney's fees lies within the sound discretion

of the court. . .." *Goichman v. City of Aspen*, 859 F.2d 1466, 1471 (10th Cir. 1988). In

enacting § 1988, Congress sought to protect defendants from burdensome litigation

having no legal or factual basis. *Fox v. Vice*, 563 U.S. 826, 833 (2011). Accordingly, §

1988 authorizes a district court to award attorney's fees to a defendant "upon a finding

that the plaintiff's action was frivolous, unreasonable, or without foundation."

*Christiansburg Garment Co. v. EEOC*, 434 U.S. 412, 421 (1978). "[A] plaintiff should not

be assessed his opponent's attorney's fees unless a court finds that his claim was

frivolous, unreasonable, or groundless, or that the plaintiff continued to litigate after it

clearly became so." *Id.* at 422. The Supreme Court emphasized that a court must "resist

the understandable temptation to engage in post hoc reasoning, by concluding that,

because a plaintiff did not ultimately prevail, his action must have been unreasonable or

without foundation." *Id.* at 421–22. "This kind of hindsight logic could discourage all but

the most airtight claims, for seldom can a prospective plaintiff be sure of ultimate

success." *Id.* "Even when the law or the facts appear questionable or unfavorable at the

outset, a party may have an entirely reasonable ground for bringing suit." *Id.*

A frivolous suit is one "based on an indisputably meritless legal theory, ... [or]

whose factual contentions are clearly baseless." *Neitzke v. Williams*, 490 U.S. 319, 327

(1989). However, the court need not find the lawsuit was "brought in subjective bad

faith" to award fees to a prevailing defendant. *Christiansburg*, 434 U.S. at 421. "A

defendant can recover if the plaintiff violates this standard at any point during the litigation, not just at its inception." *Galen v. Cnty of Los Angeles*, 477 F.3d 652, 666 (9th Cir. 2007); *see also Munson v. Milwaukee Bd. of Sch. Dirs.*, 969 F.2d 266, 271 (7th Cir. 1992) ("It is possible for an initially nonfrivolous action to become frivolous when, for example, the factual basis supporting the complaint is shown to be groundless during discovery."). The Tenth Circuit has noted that only in "rare circumstances" will a suit be so "truly frivolous" as to warrant an award of attorney fees to the defendant. *Clajon Prod. Corp. v. Petera*, 70 F.3d 1566, 1581 (10th Cir. 1995). This is a "high bar" for a prevailing defendant to meet. *Utah Animal Rights Coal. v. Salt Lake Cnty.*, 566 F.3d 1236, 1245 (10th Cir. 2009).

The Court concludes that this is the "rare case" where the Town has met the high bar for an award of attorney fees. The claims against the Town were frivolous from the outset. There was no factual basis for the claims against the Town at all. It is a matter of hornbook civil rights law that a municipality cannot be found liable on a respondeat superior theory for the unconstitutional acts of its employees. The initial complaint in this case, which effectively had no factual allegations whatsoever regarding the Town or its policies, ignored this fundamental principle.

Then, the amended complaint sought to fabricate municipal liability by somehow drawing a non-existent link between the police chief's guilty plea to financial malfeasance and supposed inadequate training and supervision of a police officer using force in apprehending a fleeing shoplifter. The assertion made in Plaintiff's opposition to the second motion to dismiss that Plaintiff had alleged "misconduct at the highest levels of city government that pervaded down to [Officer] Coleman and caused Ms. Keller's

injuries," ECF No. 19 at 11, is preposterous on its face. As Judge Domenico pointed out, Plaintiff provided "no explanation, let alone legal precedent, for why or how such financial misconduct can serve as the basis for finding that the Town had a policy, practice, or custom that authorized the use of excessive against accused shoplifters." ECF No. 22 at 9.

As a secondary basis for the supposed failure to train or supervise, Plaintiff pled that Officer Coleman's fellow officers "did not react" to Officer Coleman's use of excessive force. This was supposedly evidence that the use of unreasonable force is a "routine practice" of the Lakeside Police Department. ECF No. 14 at 5. Plaintiff provided no authority for the proposition that an alleged "failure to react" could somehow support a municipal liability claim under *Monell*. As a matter of logic, there is no circumstance where a fellow officer's mere "failure to react" could be sufficient evidence of a "municipal policy or custom [that] was the moving force behind the constitutional deprivation." *Jiron*, 392 F.3d at 419.

Plaintiff's two efforts to assert claims against the Town were frivolous from the get-go. There was no evidence whatsoever that the Town had any policy or practice (or lack of policy or practice) that could be considered the "moving force" behind the alleged constitutional violation—the tackling (and supposed slamming to the ground) of a fleeing shoplifting suspect. Even after the initial complaint was dismissed and Plaintiff's counsel was on notice of the standard for bringing a *Monell* claim, Plaintiff reasserted the claim by including legally insufficient and factually irrelevant material to try to manufacture the causal connection necessary to support a claim.

The Court concludes that claims against the Town were frivolous under the definition provided by *Neitzke* (claim is frivolous where it is "based on an indisputably meritless legal theory, ... [or] whose factual contentions are clearly baseless"). *Neitzke*, 490 U.S. at 327. *See also Thorpe v. Ancell*, 367 F. App'x 914, 919 (10th Cir. 2010) (explaining that a frivolous suit is one "based on an indisputably meritless legal theory, or whose factual contentions are clearly baseless") (unpublished) (internal quotation marks, bracket, and ellipsis omitted).

This is not a conclusion reached via *post hoc* reasoning. It should have been apparent from the filing of the lawsuit that there was no factual or legal basis to hold the Town liable for a one-off incident involving a single arrest. Thus, Plaintiff's claim against the Town was not merely "outside the parameters of existing precedent." *McClain v. Denver Health & Hosp. Auth.*, No. 17-CV-02238-PAB-NRN, 2019 WL 3996873 at *2 (D. Colo. Aug. 22, 2019). The claim was "indisputably meritless" from the beginning. *Id.*

For the reasons set forth above, it is hereby **ORDERED** that Defendant Town of Lakeside's Motion for Attorney's Fees and Costs, ECF No. 27, is **GRANTED**. The Town is entitled to an award of $8,884.00 in attorney fees and $225.00 in costs from Plaintiff.

Dated at Denver, Colorado this 12th Day of March 2026

*N. Reid Neureiter*

_____
N. Reid Neureiter
United States Magistrate Judge